Robert LIPSCOMB, Plaintiff,

v.

Robert STEWART, Chief Criminal Investigator, Baldwin County Sheriff's Dept., City of Bay Minette, Alabama, First National Bank of Bay Minette, Alabama, Defendants.

Civ. A. No. 77-102-H.

United States District Court,
S. D. Alabama, S. D.

Sept. 1, 1977.

Robert Lipscomb, pro se.

T. M. Brantley, Bay Minette, Ala., for Robert Stewart.

J. B. Blackburn, and Thomas A. Johnston, III, Bay Minette, Ala., for City of Bay Minette, Ala.

HAND, District Judge.

This cause coming on for trial before the Court on the 24th day of August, 1977, and the Court having heard the evidence and the witnesses and having considered the law applicable, finds as follows:

## FINDINGS OF FACT

1. The plaintiff is a Federal prisoner incarcerated in the Federal Penitentiary at Leavenworth, Kansas, on charges of mail fraud in both the Middle District of Tennessee and the Eastern District of Arkansas. The original defendants were Robert Stewart, Chief Investigator for the Baldwin County Sheriff's Department; The City of Bay Minette, Alabama; and The First National Bank of Bay Minette. The complaint as against The First National Bank of Bay Minette was dismissed by Order of the Court dated May 12, 1977 for failure to state a claim upon which relief could be granted, and the complaint as against the City of Bay Minette was voluntarily dismissed by the plaintiff by an oral motion in open court at the time of trial. The only claim left undecided is the plaintiff's action for return of personal property against the defendant Robert Stewart. Defendant Robert Stewart is, and at all relevant times was, a resident of the State of Alabama.

2. On December 26, 1974, the plaintiff was arrested by the defendant Robert Stewart at the Baldwin Motel in Bay Minette, Alabama, and charged with the offense of obtaining money by false pretenses, a violation of Title 14, § 209 of the *Alabama Code*. In arresting the plaintiff, the defendant investigator confiscated a brief case containing "sight drafts" allegedly worth more than $100,000.00 for purposes of evidence in the case. Under a plea agreement which required the plaintiff to make restitution to those injured by his alleged violation of the law, the plaintiff was allowed to plead guilty to a misdemeanor and gain his freedom after serving thirteen days in the Baldwin County Jail and after paying a $250.00 fine. The sight drafts were not returned to the plaintiff prior to his departure from Baldwin County, and the continued refusal of the defendant to return them to the plaintiff is the basis of this action.

3. The sight drafts themselves are on small pieces of paper approximately the size of a check in a common personal checking account. Two different drafts, one yellow and one blue, were entered into evidence individually, but each is representative of the entire collection of drafts that was confiscated from the plaintiff. At the top of each draft in bold print were the words "United America Express". The plaintiff testified that this name was employed because it was similar to "American Express" and usually facilitated the negotiation of such drafts. Below the bold print on the yellow drafts were the words, in fine print, "money order & travel cheque company." No such language appeared on the blue drafts. Each draft contained a promise to pay thirty days after sight a sum certain equal to the denomination set out on the draft, varying from $20.00 to $1,000.00. The "thirty days after sight" language is in very fine print on the blue drafts, but is readily apparent on the yellow drafts. The payee line on each draft was left blank, but the plaintiff has affixed his signature to the drawer line on some of the drafts. The yellow drafts were returnable to the United America Express Bankers Trust & Exchange in Vancouver, Canada, a dummy address through which the drafts were rerouted to his address in Michigan. The blue drafts were returnable to the International Monetary Bank in the Grand Cayman Islands, an existing institution which the plaintiff testified is now in receivership.

4. While the sight drafts are clearly proper negotiable instruments under Title 7A, § 3–104 of the *Alabama Code,* it is the use to which such drafts were put that led to the plaintiff's arrest and the confiscation of his property. As has been previously noted, the name chosen by the plaintiff, and the one under which he incorporated his business, was selected because of its proximity to the name of "American Express", a company well known for its travel cheques. Testimony showed that on at least one occasion in Baldwin County the plaintiff inquired of a merchant whether she accepted traveler's cheques before issuing his draft. It is clear from the evidence that the modus operandi of the plaintiff was to obtain thirty day loans by use of the drafts from merchants who reasonably believed that they were accepting traveler's cheques instead of drafts. Testimony of the plaintiff revealed that he paid the drafts upon receipt at his home address, and there was no evidence that such drafts had not been paid.

5. The drafts have been held by the defendant investigator since the arrest under the instructions of the Baldwin County District Attorney's Office. The defendant testified that he claims no right in the property and is willing to abide by whatever disposition of the property that is ordered by the Court.

## CONCLUSIONS OF LAW

1. The Court has jurisdiction of this action under Title 28, U.S.C.A., § 1332, as there is diversity of citizenship among the parties and the amount in controversy exceeds $10,000.00, exclusive of interest and costs.

2. In a case arising under diversity jurisdiction, it is incumbent upon a Federal Court to apply State law in the determination of the matter. *Berhardt v. Polygraphic Company of America,* 350 U.S. 198, 76 S.Ct. 273, 100 L.Ed. 199 (1956); *Angel v. Bullington,* 330 U.S. 183, 67 S.Ct. 657, 91 L.Ed. 832 (1947); *Erie RR. Co. v. Thompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). Since the transactions, events, and other matters relating to the disposition of this case took place primarily within the State of Alabama, the law of Alabama applies. *James–Dickinson Farm Mortgage Company v. Harry,* 273 U.S. 119, 47 S.Ct. 308, 71 L.Ed. 569 (1926); *cf. Dunn v. Koehring Company,* 546 F.2d 1193 (5th Cir. 1977); *Shaw v. Garrison,* 545 F.2d 980 (5th Cir. 1977).

3. Under Alabama law, property such as illegal gambling devices, obscene matter, controlled substances, intoxicating liquors, and other personal property may be confiscated and condemned upon a finding that such property has been involved in the perpetration of a criminal offense. *Ala-*

*bama Code*, Title 14, §§ 291 & 374(10)(c), Title 22, § 258(57), Title 29, § 209. There is no specific reference in either the case law or the statutory law of Alabama that purports to allow the State to retain as contraband any negotiable instruments which are admittedly legal on their face. However, this Court recognizes that the purpose of contraband statutes such as those set out above is to impair the ability of the criminal defendant in once again committing the offense for which he is charged, by either destroying or preventing the defendant from reobtaining devices which were used in the commission of the crime. Even though the property involved here was not illegal on its face and was capable of being employed for legal purposes, the fact that such property was employed for illegal purposes is enough to make such property contraband. This Court would be remiss in its duty if it now allowed the plaintiff to regain control over the devices with which he perpetrated his crime of false pretense. The Court is certain that the deprivation will not have serious consequences to the plaintiff, since he may easily have such drafts reprinted, but this Court refuses to enter into an order through which prior criminal conduct may be perpetuated.