**UNITED STATES of America**

v.

**William C. FARRELL, Appellant.**

**No. 78–1279.**

United States Court of Appeals, District of Columbia Circuit.

Argued Feb. 22, 1979.

Decided Aug. 27, 1979.

James C. Brooks * with whom Michael E. Geltner, Washington, D. C. (appointed by the Court) and Larry J. Ritchie, Washington, D. C., were on brief, for appellant.

Constantine J. Gekas, Asst. U. S. Atty., Washington, D. C., with whom Earl J. Silbert, U. S. Atty., John A. Terry and Peter E. George, Asst. U. S. Attys., Washington, D. C., were on brief, for appellee.

Before MacKINNON, ROBB and WILKEY, Circuit Judges.

Opinion for the Court filed by MacKINNON, Circuit Judge.

MacKINNON, Circuit Judge:

Farrell was convicted in United States District Court of an *attempt* to distribute heroin in violation of 21 U.S.C. § 841(a)(1). During the trial $5,000 in currency, which Farrell had voluntarily paid to an undercover police officer in the mistaken belief that the officer would deliver him some very pure heroin for the money, was introduced as evidence in the case. After his conviction Farrell filed a motion for return of the money that evidence indicated he had placed on a counter before the undercover police officer in his attempt to purchase the heroin. The district court denied the motion because "the $5,000 was used by defendant as an instrumentality of the crime for which he was convicted. . . . "[1] Farrell appeals.

The Government maintains that the result reached by the district court should be affirmed for four reasons. First, the district court allegedly lacks jurisdiction to order the money returned. Second, Farrell has not proved that he is entitled to the money. Third, the district court properly refused to return the money because it was an instrumentality of crime. And fourth, appellant is no more entitled to the $5,000 than a convicted briber is entitled to the money he allegedly paid as bribes.

We affirm the judgment of the district court, but only for a corollary of the last reason offered by the Government. We are not persuaded by the Government's first three arguments, but except for the third argument, which was relied upon by the district court, it is unnecessary to discuss them because the fourth reason affords an adequate basis for disposing of the case.

## I

The Government's third argument, which was the basis for the district court's decision, is that the court need not return the money because it was an instrumentality of Farrell's crime.[2] Acceptance of this contention would lead to a palatable result in this case, for it would preclude return of money to a drug trafficker. Nevertheless, we decline to adopt the precise formulation of the rule advocated by the Government, and rely instead on a narrower rule.

### A

"The general rule is that seized property, other than contraband, should be returned to its rightful owner once the criminal proceedings have terminated." *United States v. LaFatch*, 565 F.2d 81, 83 (6th Cir. 1977).[3] The question to be resolved here, therefore, is whether the money claimed by Farrell, which the video tape record clearly shows was paid by him voluntarily and not seized from him, is forfeitable "contraband," or otherwise to be denied him, because of its use as an instrumentality of his crime, and because of his participation in the crime.

* Student counsel.

1. *United States v. Farrell*, No. 76-236 (Order, Feb. 15, 1978), in Appellant's Br., Exhibit B.

2. The $5,000 claimed by Farrell was used in his attempt to purchase heroin.

3. *Accord: United States v. Wilson*, 176 U.S. App.D.C. 321, 324, 540 F.2d 1100, 1103 (D.C. Cir.1976); *McSurely v. Ratliff*, 398 F.2d 817, 818 (6th Cir. 1968). *See Bova v. United States*, 460 F.2d 404, 406 n. 5 (2d Cir. 1972), *quoted infra* at n. 16.

Decisional law recognizes two kinds of contraband. Traditional or *per se* contraband is defined as "objects the possession of which, without more, constitutes a crime." *One 1958 Plymouth Sedan v. Pennsylvania*, 380 U.S. 693, 699, 85 S.Ct. 1246, 1250, 14 L.Ed.2d 170 (1965). It is well established that a claimant has no right "to have [*per se* contraband] returned to him." *United States v. Jeffers*, 342 U.S. 48, 54, 72 S.Ct. 93, 96, 96 L.Ed. 59 (1951); *Trupiano v. United States*, 334 U.S. 699, 710, 68 S.Ct. 1229, 92 L.Ed. 1663 (1948). The Court explained the reason for this rule in *One 1958 Plymouth Sedan, supra*:

> The repossession of such *per se* contraband by Jeffers and Trupiano would have subjected them to criminal penalties. The return of the contraband would clearly have frustrated the express public policy against the possession of such objects.

380 U.S. at 699, 85 S.Ct. at 1250. Since it is not a crime for Farrell to possess the money that he paid in an attempt to purchase narcotics, the rule mandating forfeiture of *per se* contraband is plainly inapplicable here.[4]

There is a second kind of contraband, however—derivative contraband. "Derivative contraband are articles which are not inherently illegal, but are used in an unlawful manner." *People v. Steskal*, 55 Ill.2d 157, 302 N.E.2d 321, 323 (1973).[5] The money claimed by Farrell, which was used in an "unlawful manner"—as an instrumentality of crime—falls within this second category.

The reasons that *per se* contraband is forfeit to the government are almost wholly inapplicable to derivative contraband. *One 1958 Plymouth Sedan, supra,* 380 U.S. at 699, 85 S.Ct. 1246.[6] Nevertheless, in some circumstances derivative contraband—instrumentalities of crime—"may also be subject to forfeiture." *Steskal, supra,* 302 N.E.2d at 323. The Government argues that this is such a case. We find, however, that there is no precedent for confiscation without statutory authority (which is lacking here) of derivative contraband merely because it is derivative contraband.

There are a number of state and federal statutes mandating the forfeiture of the instrumentalities of certain crimes (deriva-

4. *Compare* this case *with Jeffers, supra,* and *Trupiano, supra,* which involved narcotics and an illegal still, respectively.

5. *Accord: One 1958 Plymouth Sedan, supra,* 380 U.S. at 699, 85 S.Ct. 1246.

6. Without a warrant, and arguably without probable cause, Pennsylvania police stopped and searched a car, finding untaxed liquor. The state petitioned for forfeiture of the car (pursuant to statute). The trial court dismissed the petition on the ground that it depended upon illegally obtained evidence. The state Supreme Court reversed, holding that since the exclusionary rule does not apply in forfeiture cases, it was irrelevant whether the seizure was legal. The United States Supreme Court reversed and remanded, holding that at least with respect to derivative contraband, the exclusionary rule applies to forfeiture proceedings. In reaching its conclusion the court in *One 1958 Plymouth Sedan, supra,* explained the distinction between *per se* and derivative contraband.

> It is apparent that the nature of the property here, though termed contraband by Pennsylvania, is quite different [from the *per se* contraband involved in *Jeffers* and *Trupiano*]. There is nothing even remotely criminal in possessing an automobile. It is only the alleged use to which this particular automobile was put that subjects [the owner] to its possible loss. . . . Furthermore, the return of the automobile to the owner would not subject him to any possible criminal penalties for possession or frustrate any public policy concerning automobiles, as automobiles. This distinction between what has been described as contraband *per se* and only derivative contraband has indeed been recognized by Pennsylvania itself in its requirement of mandatory forfeiture of illegal liquor, and stills, and only discretionary forfeiture of such things as automobiles illegally used.

tive contraband).[7] All of the cases in which a court refused to return seized property *because it was an instrumentality of crime* involved these express forfeiture statutes.[8] Generally, therefore, derivative contraband has not been forfeited except in cases in which forfeiture was authorized by statute.[9]

It is obvious that those decisions in which forfeiture statutes were applied afford no support for the Government's argument that it may confiscate derivative contraband without statutory authorization. More important, the analysis in such cases suggests an approach that is at odds with the Government's position. The issue in cases involving statutory forfeiture is whether the money or property in question was used in a way that made it subject to forfeiture under the terms of the statute. If it was, then the property is forfeited to the government. If it was not, then the claimant, if his standing to sue is recognized, may be entitled to recover the property or its value. There is not the slightest suggestion in these cases that the Government has an inherent right to confiscate property that is not covered by a forfeiture

7. Federal statutes include 18 U.S.C. § 492 (1977) (provides for forfeiture of all counterfeit money or securities of the United States, and "any articles, devices and other things made, possessed, or used in violation of this chapter . . . or any material or apparatus used or fitted or intended to be used, in the making of such counterfeits, articles, devices or things, found in the possession of any person without authority from the Secretary of the Treasury or other proper officer . . . ."); 18 U.S.C. § 1963 (1977) (a person convicted of "racketeering activity" (§ 1962) "shall forfeit to the United States . . . any interest he has acquired or maintained [therefrom]."); 21 U.S.C. § 881(a) (1977) (controlled substances, the raw materials from which they were made, and "all conveyances . . . which are used to . . . facilitate the transportation, sale [etc.] . . . [of illegal controlled substances] shall be subject to forfeiture to the United States. . . ."; and 49 U.S.C. § 782 (1977) (*see* n. 19, *infra*). States that have, or have had, statutes providing for the forfeiture of derivative contraband include Pennsylvania (*see One 1958 Plymouth Sedan, supra*), Illinois (*see People v. Zimmerman,* 44 Ill.App.3d 601, 3 Ill.Dec. 317, 358 N.E.2d 715 (1976)); Louisiana (*see Boudoin v. Fonseca,* 347 So.2d 1246 (La. App.1977), *remanded* 350 So.2d 904 (1977)); and Georgia (*see Blackmon v. Bhd. Protective Order of Elks,* 232 Ga. 671, 208 S.E.2d 483 (1974)).

8. We found only one exception. In *Lipscomb v. Stewart,* 436 F.Supp. 863 (S.D.Ala.1977), a prisoner convicted of mail fraud claimed certain negotiable instruments that had been seized at the time of his arrest. Although (1) state statutes provided for confiscation of property "involved in the preparation of [other] criminal offense[s]," and (2) "[t]here [was] no specific reference in either case law or the statutory law . . . that purports to allow the State to retain as contraband any negotiable instruments which are admittedly legal on their face," the court held:

> the fact that such property was employed for illegal purposes is enough to make such property contraband. This Court would be remiss in its duty if it now allowed the plaintiff to regain control over the devices with which he perpetrated his crime of false pretense.

436 F.Supp. at 865–866. The District Court's decision was *reversed* by the Court of Appeals without opinion. 578 F.2d 869 (5th Cir. 1978).

9. For example, 49 U.S.C. § 782 (1977) provides that any vehicle, vessel or aircraft used to carry "contraband" (illegal firearms, drugs, or counterfeit United States money or securities) "shall be seized and forfeited." In *United States v. One 1975 Ford Pickup Truck,* 558 F.2d 755 (5th Cir. 1977), the court applied § 782 and affirmed a summary judgment forfeiting a truck used to transport cocaine despite the owner's assertion that he did not know his passenger was carrying "contraband." Other examples are: *United States v. One 1974 Jeep,* 536 F.2d 1285, 1286 (9th Cir. 1976) (49 U.S.C. § 782); *United States v. One (1) Harley-Davidson Motorcycle,* 508 F.2d 351 (9th Cir. 1974) (49 U.S.C. § 782); *United States v. One 1969 Plymouth Fury Automobile,* 476 F.2d 960 (5th Cir. 1973), *reh. denied,* 509 F.2d 1324 (5th Cir.), *cert. denied sub nom., Ford Motor Credit Corp. v. United States,* 423 U.S. 838, 96 S.Ct. 65, 46 L.Ed.2d 57 (1975). *See* also *King v. United States,* 364 F.2d 235 (5th Cir. 1966) (forfeiture statute held not to apply); *United States v. One 1972 Datsun,* 378 F.Supp. 1200 (D.N.H.1974) (held 21 U.S.C. § 881 must be applied narrowly, so that only conveyances "substantially and instrumentally connected with illegal behavior" will be subject to forfeiture).

statute merely because it was an instrumentality of crime.[10]

In addition to lacking any precedential support, the Government's contention—that it may, even in the absence of statutory authority, confiscate all instrumentalities of crime—is very broad. Some crimes are far more serious than others. But if such a broad rule as advocated by the Government were adopted in this case, there may be no logical way to avoid applying it in cases involving less serious offenses—cases in which the rule should obviously not be applied. Since forfeiture or refusal to countenance Farrell's claim here can be justified by a narrow and well established rule, we see no reason to adopt the unsupported, broad and potentially unmanageable rule advocated by the Government.

Congress is free, of course, to decide that money involved in drug transactions should be forfeited. It has already provided that the drug itself (contraband), the raw materials from which the drug is made (an instrumentality of crime), and "all conveyances, including aircraft, vehicles, or vessels, which are used to transport, or in any manner to facilitate the transportation, sale, receipt, possession or concealment of [illegal controlled substances]" (also instrumentalities of the crime) "shall be subject to forfeiture to the United States." 21 U.S.C. § 881(a) (1977). Congress has also recently enacted the Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. §§ 1961–1968 (1977), 84 Stat. 981, et seq., and amended 92 Stat. 2465, which provides that "any person who has received any income derived, directly or indirectly, from a pattern of racketeering activity . . . [etc.]," 18 U.S.C. § 1962, "shall forfeit to the United States . . . any [such] interest he has acquired or maintained . . . ." 18 U.S.C. § 1963. This statute covers "racketeering" in drugs. *United States v. Elliott,* 571 F.2d 880 (5th Cir. 1978). So Congress is not unmindful of the necessity of enacting forfeiture statutes. It would be a relatively easy matter for Congress to add to the narcotics list another instrumentality of the crime—the money used to purchase the narcotics—though the difficulty of identifying and tracing money could prove to be obstacles to enforcement. Under the circumstances, we decline to create a new rule to do what Congress has not done.

### B

The Government and the district court cite two cases in support of the argument that courts need not return money that was an instrumentality of crime: *In re Wiltron Associates,* 49 F.R.D. 170, 173 (S.D.N.Y. 1970), and *United States v. Pardo-Bolland,* 229 F.Supp. 473, 478 (S.D.N.Y.1964). In both cases, the court denied pretrial Rule 41(e) motions for the return of seized property in part because the property was an instrumentality of crime. Since the $5,000 claimed by Farrell was an instrument of his crime, the Government contends that those cases establish that he is not entitled to have the money returned.

While *Wiltron* and *Pardo-Bolland* bear a superficial similarity to the instant case, they are distinguishable. First, unlike this case, they involved Rule 41(e) motions. Rule 41(e) of the Federal Rules of Criminal Procedure permits a "person aggrieved by an unlawful search and seizure" to "move the district court . . . for the return of the property . . . which was illegally seized." Thus the central issue in those cases was whether the seizure of the

10. *See Lipscomb v. Stewart, supra* at n. 9, in which the district court imposed a forfeiture not mandated by statute, and the Court of Appeals reversed—unfortunately without opinion. *Cf. Mayo v. United States,* 413 F.Supp. 160, 162 (E.D.Ill.1976) ("[J]udicial forfeiture has little acceptance in the United States and generally the remedy must be via statutory proceedings."). *See also Howard v. United States,* 423 F.2d 1102, 1104 (9th Cir. 1970) ("The use of an automobile to commute to the scene of a crime does not justify the seizure of that automobile under sections 781 and 782."); *Platt v. United States,* 163 F.2d 165 (10th Cir. 1947).

property was illegal. Since Rule 41(b)(3) provides that "[a] warrant may be issued . . . to search for and seize any . . property designed or intended for use or which is or has been used as the means of committing a criminal offense,"[11] the courts came to the unremarkable conclusions that the seizure of the instrumentalities of crime was not illegal. Hence, the courts in *Wiltron* and *Pardo-Bolland* denied the Rule 41(e) motions to return the property.

This case does not involve a Rule 41(e) motion. It does not turn on whether the initial "seizure" of the money was illegal.[12] The issue here is whether the Government may retain the money *after* Farrell has been convicted. Neither *Wiltron, Pardo-Bolland,* nor Rule 41(b)(3), each of which permits the Government to seize the instrumentalities of crime and hold them until the trial is completed, is dispositive of the issue here presented.

*Wiltron* and *Pardo-Bolland* are also distinguishable because, unlike the instant case, they involved pre-trial motions. The primary goal of the claimants in those cases was to prevent the seized property from being used as evidence. Conversely, the Government's primary reason for retaining the property was so that it could be used as evidence at trial.[13] Consequently, those cases merely held that property which was an instrumentality of crime and properly seized "may be retained by the government and used upon trial insofar as relevant." *Pardo-Bolland, supra,* 229 F.Supp. at 476.[14] Whether the Government could retain the property after trial merely because it was an instrumentality of crime was neither addressed nor decided. Moreover, the Government cannot draw any favorable inference from *Wiltron* and *Pardo-Bolland*: the Government's right to seize and retain certain evidence for use at trial "does not in itself entitle the State to its retention" after trial, much less its forfeiture. *Warden v. Hayden,* 387 U.S. 294, 307–08, 87 S.Ct. 1642, 1650, 18 L.Ed.2d 782 (1967). On the contrary, even property that was used as evidence "should [normally] be returned to its rightful owner once the criminal proceedings have terminated." *United States v. LaFatch,* 565 F.2d at 83.[15]

To summarize these cases, courts may rightfully refuse to return claimed property when it falls into one of three categories: (1) the property involved is contraband; (2) the property involved is forfeit pursuant to statute; or (3) the property involved is subject to government retention pending termination of the trial. The $5,000 claimed by Farrell does not fall into any of these categories, and therefore, none of the cases are precedent for working a forfeiture here. The Government and the

11. Rule 41(b)(3) provides:

A warrant may be issued under this rule to search for and seize any (1) property that constitutes evidence of the commission of a criminal offense; or (2) contraband, the fruits of crime, or things otherwise criminally possessed; or (3) property designed or intended for use or which is or has been used as the means of committing a criminal offense.

12. On these facts, the retention of the money was plainly legal under Rule 41(b)(3).

13. *See generally Warden v. Hayden,* 387 U.S. 294, 87 S.Ct. 1642, 18 L.Ed.2d 782 (1967), and Notes of Advisory Committee on Rules [41(b)], 18 U.S.C.A. Rules 32–42, 483, 484 (1976).

14. This holding is consistent with Rule 41(b)(3), which permits issuance of a warrant for the seizure of material for use as evidence.

15. In a discussion of the American Law Institute's Model Code of Pre-Arraignment Procedure, Judge Friendly noted that "decisions . . have failed to adequately discriminate between proceedings for suppression of evidentiary use and for the return of seized things. The grounds justifying one type of relief are not necessarily grounds for the other. For example, when the seizure is of contraband, the owner is not entitled to return even though the seizure was illegal. *Per contra* goods not in the nature of contraband, which were legally seized, should be returned when their evidentiary utility is exhausted." *Bova v. United States,* 460 F.2d 404, 406 n. 5 (2d Cir. 1972).

district court urge us to create a new category of property subject to forfeiture: instrumentalities of crime. In view of the lack of precedent, the breadth of the rule advocated, and the availability of a more suitable alternative route to the same result, we decline the Government's invitation to base our decision on that precise basis.

## II

The Government's final argument is based on an analogy to the venerable rule that a person convicted of bribery has no right to have the bribe money returned to him. The leading case is *Clark v. United States,* 102 U.S. 322, 331–32, 26 L.Ed. 181 (1880) in which the Court stated:

> [B]ribery . . . placed the claimants and the man they corrupted *in pari delicto.* They could not recover back from him the money they paid, neither can they from the United States after it has been taken from him as a punishment for his faithlessness to his trust.[16]

The Government contends that Farrell's payment to an undercover police officer in order to purchase narcotics is analogous to a bribe, and therefore, that *Clark* controls. Appellant responds that the bribery cases are an unique "exception to the rule that property should be returned to its rightful owner when it is no longer needed as evidence." Appellant continues:

> . . . The principles governing the non-returnability of bribe money involve the Government's paramount claim to money used to bribe its agent. . . . Contrary to the Government's contention, this principle has no application to the routine return, at the close of all criminal proceedings, of the $5,000 seized from Mr. Farrell at the time of his arrest.[17]

Appellant's argument has some force, for the Government does have a special interest in money that was used to bribe its officials. But even assuming, *arguendo,* that the bribery cases are distinguishable in that respect, appellant's position must be rejected because there is a second reason within the bribery rule that is equally applicable here. The Government's brief touched on this reason when it stated that appellant "forfeited the money by his surrender of the money in furtherance of an illegal scheme." [18]

It has long been "the settled rule that property delivered under an illegal contract cannot be recovered back by any party *in pari delicto.*" *Harriman v. Northern Securities,* 197 U.S. 244, 295, 25 S.Ct. 493, 504, 49 L.Ed. 739 (1905).[19] In *St. Louis Railroad v. Terre Haute Railroad,* 145 U.S. 393, 407–08, 12 S.Ct. 953, 36 L.Ed. 748 (1892),[20] the Court explained:

> The general rule, in equity, as at law, is *In pari delicto potior est conditio defendentis;* [21] and, therefore, *neither party to an illegal contract will be aided by the court, whether to enforce it or set it*

16. *Accord: United States v. Iovenelli,* 403 F.2d 468, 469 (7th Cir. 1968); *United States v. Thomas,* 75 F.2d 369, 371 (5th Cir. 1935); *United States v. Connoughton,* 39 F.2d 237, 238 (E.D.N.Y.1930); *United States v. Galbreath,* 8 F.2d 360 (N.D.Cal.1925).

17. Reply Br. 6–7.

18. Gov't. Br. 20.

19. After Northern Securities Co. was held to be an illegal trust, the corporation distributed its assets to stockholders, *pro rata.* Plaintiff sued asserting that his Northern Pacific stock was delivered to Northern Securities in trust and in the good faith belief that the combination (Northern Securities) would not violate the antitrust laws. The court dismissed plaintiff's bill because "[t]he purchase by the Securities Company was on its own account and not in trust, and cannot be disturbed because of illegal purpose at the clamor of parties *in pari delicto.*" 197 U.S. at 298, 25 S.Ct. at 505.

20. Plaintiff sued to set aside an *ultra vires* conveyance of his railroad to the defendant. The court held that although the contract was "*ultra vires* of the defendant, and therefore did not bind either party," 145 U.S. at 406, 12 S.Ct. at 957, the contract should not be set aside on the petition of a person *in pari delicto.*

21. In case of equal fault the condition of the party defending is the better one. The refusal of the courts to aid in such transactions is a maxim of public policy equally respected in courts of law and courts of equity. Brooms

*aside.* If the contract is illegal, affirmative relief against it will not be granted, at law or in equity, . . .

When the parties are *in pari delicto,* and the contract has been fully executed on the part of the plaintiff, by the conveyance of property, or by the payment of money, and has not been repudiated by the defendant, it is now equally well settled that neither a court of law nor a court of equity will assist the plaintiff to recover back the property conveyed or money paid under the contract. For instance, *property conveyed pursuant to a contract made in consideration of the compounding of a crime,* and the stifling of a criminal prosecution, *and therefore clearly illegal, cannot be recovered back at law,* nor the conveyance set aside in equity, unless obtained by such fraud or oppression on the part of the grantee, that the conveyance cannot be considered the voluntary act of the grantor.[22] [citations omitted]

Courts will not aid those whose cause of action is based upon an illegal act. *Rutkin v. Reinfeld,* 229 F.2d 248, 256 (2d Cir. 1956) ("A member of . . . an illegal partnership is not entitled to enforcement of any right depending on the partnership agreement."); *Kaiser-Frazer Corp. v. Otis & Co.,* 195 F.2d 838, 843–844 (2d Cir.), *cert. denied* 344 U.S. 856, 73 S.Ct. 89, 97 L.Ed. 664 (1952) (a contract which contravenes public policy is unenforceable regardless of the equities between the parties); *Crylon Steel Company v. Globus,* 185 F.Supp. 757, 760 (S.D.N.Y.1960) ("where . . . a transaction is a fraud upon the public and is contrary to public policy . . the courts will leave the parties where it finds them . . . 'If such a contract be executory, it will refuse to enforce the contract; if executed it will refuse to disturb the result.' (citations omitted)."); *Williams v. Wilson,* 181 F.Supp. 351, 354 (E.D.Ark. 1960) (court will leave parties to illegal bargains where it finds them); *Schneider v. O'Neil,* 145 F.Supp. 120, 219 (E.D.Ark.1956) (commissions for sale of insurance which were illegally paid could not be recovered by a trustee in bankruptcy as parties were *in pari delicto* : "The rule as generally stated is that no court will allow itself to be used in aid of any of the parties to an illegal agreement. (citations omitted).").

14 W. Jaeger, Williston on Contracts (3d ed. 1972) § 1630A at 19 (hereinafter Jaeger) states:

> If . . . the cause of action appears to rise . . . [from] the transgression of positive law of this country, there the court says he has no right to be assisted. It is upon that ground the court goes; not for the sake of the defendant, but because they will not lend their aid to such a plaintiff.

The rule denying recovery to one who transgresses positive law is thus based on *public policy* rather than on a desire to benefit or punish either party.

The Supreme Court of Illinois likewise places the refusal of courts to act in such situations on public policy grounds:

> [I]n a situation of this kind [contract in restraint of trade] the interest of the public, rather than the equitable standing of individual parties, is of determining importance. The defense is not here allowed because the party raising it is entitled to any consideration, but upon principles of public policy and to conserve the public welfare.

*Parish v. Schwartz,* 344 Ill. 563, 176 N.E. 757, 761 (1931); *See also* 14 Williston on

Legal Maxims. ¶ 692 (1868) citing 1 Story Equity Jurisprudence, 6th ed., p. 69; 2 Pomeroy's Equity Jurisprudence § 402, 117 (Symons) (5th Ed.).

22. *Accord: Second Russian Ins. Co. v. Miller,* 268 U.S. 552, 562, 45 S.Ct. 593, 69 L.Ed. 1088 (1925); *Danebo Lumber Co. v. Koutsky-Brennan-Vana Co.,* 182 F.2d 489, 493 (9th Cir.), *cert. denied,* 340 U.S. 830, 71 S.Ct. 67, 95 L.Ed. 609 (1950).

The exception for property "obtained by such fraud or oppression on the part of the grantee, that the conveyance cannot be considered the voluntary act of the grantor," would permit a defendant entrapped into making an illegal payment to recover his money. *Cf. United States v. Connoughton,* 39 F.2d 237 (E.D.N.Y. 1930).

Contracts, *supra*, § 1630A at 23, n. 14 (citing cases). *O'Mara v. Dentinger*, 271 A.D. 22, 62 N.Y.S.2d 282, (1946) also states the rule concisely:

> When a cause of action is predicated on an illegal transaction, or where one must trace his cause to such a transaction, there can be no recovery. (citing Rest. Contracts, § 598).

■ The $5,000 claimed by Farrell's court suit was paid to a government agent pursuant to what Farrell thought was an illegal contract to purchase heroin. Under the rule applied in *Harriman, St. Louis Railroad* and the other cited cases he cannot obtain the aid of a court of law to secure its return. We reach this result not because the money was an instrumentality of the crime, though the fact that the money was involved in a crime figures in the equation, but because it is contrary to public policy to permit the courts to be used by the wrongdoer Farrell to obtain the property he voluntarily surrendered as part of his attempt to violate the law. If as the cases hold it is sound public policy to deny the use of the courts to persons *in pari delicto* who seek the return of illegally paid money, *a fortiori* it is sound public policy to deny the aid of the courts to a single violator of the law who seeks the return of money paid to a government agent in an attempt to contract for the purchase of contraband drugs.[23]

### III

Thus we do not find it necessary to adopt the Government's broad contention that instrumentalities of crime are subject to forfeiture. Precedent does not support such a broad rule, and this case is more properly disposed of by an application of the narrow rule that public policy will not permit the courts to be used to aid a wrongdoer to recover money paid to induce an illegal

contract.[24] We accordingly deny Farrell the aid of the courts to secure the return of the $5,000 that he illegally paid and affirm the judgment of the district court on the ground of public policy.

*Judgment accordingly.*

---

**23.** *Ballentine's Law Dictionary*, 631 (1969) defines *"in pari delicto"* as "[t]he status of both parties to an illegal agreement or transaction where they are equally at fault." Since Farrell attempted to purchase heroin from undercover police officers, technically, the parties were not *in pari delicto*—Farrell was the only one at fault. This however is no reason not to apply the rule in *St. Louis Railroad, supra*, text

accompanying note 22, that "property conveyed pursuant to a[n illegal] contract . . . cannot be recovered back at law . . .."

**24.** Those who believe that criminals should lose all property that is used in connection with crime must go to the legislatures, not the courts.