**UNITED STATES of America,**
**Appellant,**

**v.**

**James Lee SMITH, Appellee.**

**No. 80–2065.**

United States Court of Appeals,
Eighth Circuit.

Submitted July 23, 1981.

Decided Sept. 16, 1981.

Gottlieb, Feldman, Greenfield & Bergman, New York City, for appellee.

Judith A. Whetstine, Asst. U. S. Atty., N.D. Iowa, Cedar Rapids, Iowa, Dennis Ogden, argued, Law Student Intern, for appellant.

Before LAY, Chief Judge, and STEPHENSON and McMILLIAN, Circuit Judges.

STEPHENSON, Circuit Judge.

## I. PREFACE

The United States government appeals the district court's[1] order granting summary judgment to James L. Smith and ordering the government to return Smith's $25,000 to him. The money has been in the government's possession since undercover agents arrested Smith as he used the $25,000 in his attempt to purchase hashish from the agents. The government argues that the contract to purchase the drugs was an illegal contract and that it would be against public policy to allow a wrongdoer such as Smith to use the court to recover money under an illegal contract. We agree with the government and reverse the district court.

## II. BACKGROUND

### A. *Factual*

The facts in this case were undisputed making it an appropriate matter for summary judgment. An agent of the Drug Enforcement Agency (DEA) contacted Smith in July of 1976, after the DEA learned that Smith would be interested in buying a quantity of hashish. Smith stated he desired to purchase thirty pounds of hashish and could pay $25,000 immediately and would be able to pay the balance of the $39,000 total price within a few days. Smith and another DEA agent met at a Des Moines hotel on July 22, 1976, to exchange the cash for the hashish. In the parking lot, the two first went over to the agent's car and the agent showed Smith the hashish contained in a briefcase. After Smith looked at it, the agent requested to see the money so the two men walked over to Smith's car. Smith opened the trunk and a brief case in it which contained a brown envelope. Smith indicated that the $25,000 was in the envelope. The agent opened the envelope and saw that it did contain some money.

Because Smith wanted to test the hashish, the two men returned to the agent's car. The agent opened a brown suitcase holding two cardboard boxes full of phone books and represented that the boxes held the remainder of the hashish. The agent

1. The Honorable Edward J. McManus, Chief Judge, United States District Court for the Northern District of Iowa, presiding. The court's opinion is published at 497 F.Supp. 459.

did not let Smith open the boxes and told Smith that he had to have control of the money before he would give up the hashish. The men agreed to put their cars side by side and Smith said he would test the hashish in the agent's car while the agent counted the money in Smith's car. While the agent examined the money, he saw Smith trying to open the suitcase full of phone books. When Smith asked the agent for the keys to the suitcase, the agent got out of Smith's car and arrested him.

After Smith pled guilty to several drug offenses, he was sentenced to prison and fined. He served his sentence and paid the fine.

The government kept possession of Smith's automobile through statutory procedures. No forfeiture proceedings were instituted regarding the $25,000,[2] but the government also kept possession of it.

B. *Procedural*

On February 29, 1980, the government filed a declaratory judgment action seeking a ruling that the money was the property of the United States and that Smith was barred from recovering the $25,000. Smith filed a motion to dismiss or, in the alternative, a motion for summary judgment and the government filed a resistance and a cross-motion for summary judgment. On September 16, 1980, the district court entered summary judgment in favor of Smith. The district court denied the government's motion to reconsider on November 10, 1980, and the government thereafter appealed to this court.

III. ANALYSIS

We agree with the district court that "[t]he legal issue before the court is whether [the government or Smith] is entitled to the $25,000.00 obtained from [Smith] at the time of his arrest." *United States v. Smith,* 497 F.Supp. 459, 461 (N.D. Iowa 1980).

In resolving the above issue, the district court determined that "the money obtained from [Smith] was acquired via seizure, no doubt with an eye towards using it as evidence in [Smith's] trial." *Id.* The court correctly stated the general rule that seized property should be returned once criminal proceedings are over unless the property is subject to forfeiture. Since there was no forfeiture statute covering the money at issue,[3] the court ruled that Smith was entitled to the return of the $25,000. *Id.* at 461–62. The court cited *United States v. Ortega,* 450 F.Supp. 211 (S.D.N.Y.1978), as being consistent with its determination.

In its discussion of an alternative theory for its holding, the district court assumed that the government's possession of the money occurred "pursuant to contract" and not by seizure. *United States v. Smith, supra,* 497 F.Supp. at 462. The court rejected the government's illegal contract theory and opined "that the forfeiture statutes provide the only method by which the government may retain property acquired in the course of its efforts to prevent crime." *Id.* In denying the government's motion to reconsider, the court stated that it found unpersuasive *United States v. Farrell,* 606 F.2d 1341 (D.C.Cir.1979), a case utilizing the illegal contract theory.

We reverse the district court because we believe the government did not seize the money and because we find *Farrell* persuasive.

■ Smith voluntarily transferred the money to the DEA agent. The agent did not use physical force to obtain possession, nor was his possession of the money against the will of Smith. The agent told Smith that he had to have control of the money before he would give up the drugs and Smith agreed to let the agent take possession of the money in Smith's car. These

---

**2.** Both parties agree that in 1976 money furnished in exchange for a controlled substance was not covered under the forfeiture statute. *See* 21 U.S.C. § 881 (1976). Because the statute was amended in 1978 to include such money, the problem we face in this case will not be a reoccurring one. *See* Psychotropic Substances Act of 1978, Pub.L.No. 95–633, § 301(1), 92 Stat. 3777 (amending 21 U.S.C. § 881 (1976)).

**3.** *See* n.2 *supra.*

facts are distinguishable from cases where agents arrest someone and seize money or drugs in that person's possession. Smith was not under arrest at the time he transferred the money to the DEA agent. Smith willingly allowed the DEA agent to take possession of the money, therefore, the government did not seize the money and *United States v. Ortega, supra,* 450 F.Supp. at 211, is inapplicable.

 This case is indistinguishable from *United States v. Farrell, supra,* 606 F.2d at 1341, and we follow that court's well-reasoned opinion. *Farrell* placed $5,000 on a counter before an undercover officer in the mistaken belief that the officer would give him heroin in return. *Id.* at 1343. The *Farrell* court was confronted with the same issue that is before us: "The issue here is whether the Government may retain the money *after* Farrell has been convicted." *Id.* at 1347.

The court noted that "[c]ourts will not aid those whose cause of action is based upon an illegal act" and that "denying recovery to one who transgresses positive law is thus based on *public policy.*" *Id.* at 1349. Utilizing those general principles, the court denied Farrell the aid of the courts and the government was allowed to keep possession of the money.

> We reach this result * * * because it is contrary to public policy to permit the courts to be used by the wrongdoer Farrell to obtain the property he voluntarily surrendered as part of his attempt to violate the law. If as the cases hold it is sound public policy to deny the use of the courts to persons *in pari delicto* who seek the return of illegally paid money, *a fortiori* it is sound public policy to deny the aid of the courts to a single violator of the law who seeks the return of money paid to a government agent in an attempt to contract for the purchase of contraband drugs. * * * * [T]his case is more properly disposed of by an application of the narrow rule that public policy will not permit the courts to be used to

aid a wrongdoer to recover money paid to induce an illegal contract. *Id.* at 1350.

As in *Farrell,* public policy requires us to deny Smith the aid of the courts in his efforts to regain the $25,000 he used to induce an illegal contract to purchase hashish. We accordingly reverse the judgment of the district court and order that summary judgment be entered in favor of the government.

Reversed.