**UNITED STATES of America**

v.

**David KIM.**

**Cr. No. 89–00299–A.**

United States District Court,
E.D. Virginia,
Alexandria Division.

June 15, 1990.

Henry E. Hudson, U.S. Atty., Gordon D. Kromberg, Sp. Asst. U.S. Atty., Alexandria, Va., for plaintiff.

Marvin D. Miller, Alexandria, Va., for defendant.

## ORDER

ELLIS, District Judge.

This matter is before the Court on defendant's misnamed Motion for Return of Seized Property. Presented for decision is the apparently novel question whether the government must return to defendant the money defendant voluntarily paid to government officials as a gratuity in violation of 18 U.S.C. § 201(c)(1). For the reasons that follow, the Court concludes that sound public policy considerations preclude return of the money.

The material facts are uncontroverted. Defendant is a Korean-born, naturalized American citizen. In June 1989, he sent the Immigration and Naturalization Service's ("INS") Arlington, Virginia office a letter stating that a Korean national, Hee Kim, unrelated to defendant, was residing illegally in Northern Virginia and was wanted by Korean authorities for criminal fraud. The letter enclosed a copy of a Korean arrest warrant naming Hee Kim. It appears that defendant, perhaps spurred

on by his brother-in-law, wanted INS agents to arrest and deport Hee Kim to Korea where he would presumably face charges stemming from the theft by fraud of over one million dollars from a church in Korea.

Defendant's letter was initially referred to INS Special Agent Scofield, who received a series of telephone calls from defendant inquiring as to the status of INS efforts to locate Hee Kim. In one of these conversations, defendant told the agent, "I'll really make this worth while if you do this. My brother-in-law has a lot of money." The agent replied that the INS would pursue the matter in any event as a criminal alien case. Thereafter, the case was referred first to Supervisory Special Agent Allen Provencal and then, in July 1989, to Special Agent William Congleton. The latter agent ascertained that Hee Kim had overstayed his B–2 tourist visa and was deportable.

On August 23, 1989, in the course of one of defendant's telephone status inquiries, Agent Congleton asked defendant to send another copy of the warrant and information concerning Hee Kim, as those originally sent had been misplaced. Defendant promptly complied. On August 24, 1989, he sent the requested information plus $500 in cash to Agent Congleton at the INS Arlington, Virginia office. The next day, in a consensually recorded telephone conversation placed by Agent Congleton to defendant at his home, defendant admitted sending the money, saying that it was "just to do me a favor ... quicker." During this conversation, defendant agreed to travel to Arlington to meet with Agent Congleton and his supervisor. Defendant also suggested a payment of $1,000 for the supervisor. Three days later, defendant met at an Arlington motel with Agent Congleton and Agent Colley, a representative of the Office of the Inspector General, Department of Justice. The latter individual posed as Supervisory Agent Provencal, Agent Congleton's supervisor. At this meeting, defendant reaffirmed his desire to see Hee Kim promptly arrested and deported to Korea. He then handed each agent an envelope. Agent Congleton's envelope was marked "Mr. William Congleton" and con-

tained $500. Agent Colley's was marked "Mr. Provential [sic]" and contained $1,000. After the envelopes were opened, defendant stated "It's not enough? Here take this." He then retrieved Agent Congleton's envelope containing the $500 and handed him instead an envelope bearing Agent Scofield's name, stating there was more money in that envelope. It contained $1,000. Finally, defendant advised the agents that there would be more money for them once Hee Kim was arrested and deported.

Defendant was thereafter arrested. He subsequently pled guilty to a two-count criminal information charging him with payments of gratuities to public officials in violation of 18 U.S.C. § 201(c). After a guidelines sentencing hearing, defendant was placed on one year of supervised probation and ordered (i) to pay a $2,500 fine, (ii) to perform 75 hours of community service in the Asian refugee community, and (iii) to pay a $50 special assessment for each count pursuant to 18 U.S.C. § 3013. This motion followed to recover the $2,500 defendant had given the agents.

Neither party has cited any decision involving whether a person convicted of paying an official a gratuity is entitled to the return of the gratuity. There is no similar absence of authority in the case of bribery. Defendant concedes, as he must, the well-settled rule that a person convicted of bribery has no right to the return of the bribe money. *See, e.g., Clark v. United States,* 102 U.S. 322, 331–32, 26 L.Ed. 181 (1880); *United States v. Wilson,* 591 F.2d 546, 547 (9th Cir.1979); *United States v. Iovenelli,* 403 F.2d 468, 469 (7th Cir.1968); *United States v. Thomas,* 75 F.2d 369, 370–71 (5th Cir.1935). But this rule, defendant argues, has no application to him because he was convicted not of bribery, but of the lesser included offense of paying a gratuity to a public official. Unlike the illegal payment of a gratuity, the offense of bribery requires proof of corrupt intent, *i.e.,* proof of specific intent to induce a public official to act in a certain way. *See United States v. Strand,* 574 F.2d 993, 995 (9th Cir.1978) (while proof of illegal gratuity payments to officials requires the simple *mens rea* to give the gratuity, bribery re-

quires a "heightened criminal intent"); *United States v. Irwin,* 354 F.2d 192, 196 (2d Cir.1965), *cert. denied,* 383 U.S. 967, 86 S.Ct. 1272, 16 L.Ed.2d 308 (1966).[1] *Compare* 18 U.S.C. § 201(b) (bribery) *with* 18 U.S.C. § 201(c) (illegal gratuity). In all other respects, the offenses are congruent. Yet defendant argues that the corrupt intent distinction makes all the difference and compels a different result. The argument is unpersuasive. It ignores the serious nature of defendant's offense and incorrectly assumes that the rule of *Clark v. United States* rests solely on the corrupt intent requirement of bribery. The payment of a gratuity to an official is undeniably a serious crime. Like bribery, it is a felony offense. Although less serious than bribery, violators of the illegal gratuity section may be imprisoned for up to two years and fined. 18 U.S.C. § 201(c). The payment of illegal gratuities is, in the words of the Second Circuit, "an evil in itself, even though the donor does not corruptly intend to influence the employee's official acts." *United States v. Irwin,* 354 F.2d at 196. And what is the evil? Again the Second Circuit explains: "The iniquity of the procuring of public officials, be it intentional or unintentional, is ... fatally destructive to good government." *Id.* From this rationale for the offense, it follows that the rule of *Clark v. United States* applies to illegal gratuities as well as to bribery.

 It also follows that the return of the money would offend public policy, not to mention public sensibilities. The money, while not contraband, facilitated the crime

and was crucial to it.[2] To return it to defendant would return to the criminal the means by which he committed the crime. One may as well return the burglar's tools to the burglar. Of course, the money's role in facilitating the crime, by itself, may not suffice to block return of the money.[3] Here, though, there is more; here, public policy is further offended by the criminal's need to invoke the power of the court to compel return of the money. Courts properly refuse to aid those whose cause of action is based on an illegal act. *United States v. Farrell,* 606 F.2d 1341, 1349 (D.C. Cir.1979) (citations omitted). In sum, where, as here, a person commits a felony by voluntarily paying a gratuity to a public official, considerations of public policy preclude return of the money to the felon.

Support for this conclusion is furnished by those decisions refusing to return to drug purchasers the money paid to undercover agents in "buy-bust" situations. *See United States v. Smith,* 659 F.2d 97 (8th Cir.1981); *United States v. Farrell,* 606 F.2d 1341 (D.C.Cir.1979). The D.C. Circuit's decision in *Farrell* is instructive.[4] There, the court affirmed an order denying a defendant's request for the return of the $5000 he paid an undercover agent for the purchase of pure heroin. In reaching this result, the court relied on "the venerable rule that a person convicted of bribery has no right to have the bribe money returned to him." 606 F.2d at 1348. This, the court acknowledged, was an exception to the normal rule that non-contraband property is returned when no longer needed as evi-

---

**1.** As a result of a 1986 reorganization and amendment of Section 201, the offense of illegal gratuity payments to officials, formerly codified at 18 U.S.C. § 201(f), is now found at 18 U.S.C. § 201(c).

**2.** Although not contraband, the $2500 was voluntarily given to the officials as part of defendant's felonious conduct; it was not seized. Inapplicable here, therefore, is the general rule that seized property, other than contraband, should be returned to its rightful owner at the conclusion of criminal proceedings. *See United States v. LaFatch,* 565 F.2d 81, 83 (6th Cir.1977), *cert. denied,* 435 U.S. 971, 98 S.Ct. 1611, 56 L.Ed.2d 62 (1978); *United States v. Brant,* 684 F.Supp. 421 (M.D.N.C.), *aff'd,* 865 F.2d 1260 (4th Cir.1988). Equally inapplicable is Rule 41(e),

Fed.R.Crim.P., which applies only where "[a] person aggrieved by an unlawful search and seizure" seeks return of illegally seized property.

**3.** *Cf. Howard v. United States,* 423 F.2d 1102, 1104 (9th Cir.1970) ("The use of an automobile to commute to the scene of a crime does not justify the seizure of that automobile under sections [49 U.S.C.] 781 and 782."); *United States v. Farrell,* 606 F.2d 1341, 1348 (D.C.Cir.1979) (court declined invitation to make mere instrumentalities of crime subject to forfeiture absent a statute).

**4.** Reliance on *Farrell,* even though a drug case, is particularly appropriate here given *Farrell*'s reliance on *Clark v. United States. See* 606 F.2d at 1348.

dence. The court viewed the exception as warranted because defendant's status was analogous to that of persons *in pari delicto*,[5] as to whom "it is sound public policy to deny the aid of the courts." *Id.* at 1350. The same principle applies here and the same result therefore obtains.

To sum up, then, two related reasons spell failure for defendant's motion to recover the gratuity payments. First, the distinction between the offenses of bribery and illegal gratuity payments does not preclude the application of the *Clark* rule in illegal gratuity cases. That rule bars defendant's recovery of the gratuity payments. Second, the public policy rationale of *Farrell* applies here and teaches that sound public policy precludes the return of the illegal gratuity payments. Defendant forfeited the money by his use and surrender of it to government officials in furtherance of his illegal scheme.

Accordingly, defendant's motion for return of the money must be, and hereby is DENIED.

---

5. Defendants here and in *Farrell* are more accurately described as *in solo delicto*. The *Farrell* court recognized this, but still found persuasive the *in pari delicto* line of authority. *Farrell,* 606 F.2d at 1350 n. 23.