David L. CONKEY, dba Alpha Chemical and Science, David Weller dba Terra Science, Carol Conkey, dba Alpha Chemical Supply, Barney Hopkins, Plaintiffs,

v.

Janet RENO, Attorney General of the United States, in her official capacity, Robert Bonner, Administrator, Drug Enforcement Administration, U.S. Department of Justice, in his official capacity, George Levigne, Special Agent, Drug Enforcement Administration, in his official capacity and individually, Greg Bratten, Special Agent, Drug Enforcement Administration, and Deputy Sheriff of Washoe County, Nevada, in his official capacity and individually, Paul George, Special Agent, Drug Enforcement Administration, in his official capacity and individually, Peter Johnson, Special Agent, Drug Enforcement Administration, in his official capacity and individually, John E. Coonce, Supervisory Special Agent, Drug Enforcement Administration, in his official capacity and individually, Maria Cartagena, Special Agent, Drug Enforcement Administration, in her official capacity and individually, Dorothy Nash Holmes, District Attorney for Washoe County, Nevada, in her official capacity and individually, Vincent G. Swinney, Sheriff of Washoe County, Nevada, in his official capacity and individually, Paul E. Donald, Hazardous Materials Specialist, District Health Dpt., Washoe County, Nevada, in his official capacity and individually, and Does 1–20, Defendants.

No. CV–N–94–14–ECR.

United States District Court,
D. Nevada.

May 4, 1995.

Michael Paul Adams, Thomas Steel, Nanci L. Clarence, Stuart Buckley of Steel, Clarence & Buckley, San Francisco, CA, John Oakes, Don Gish, Reno, NV, for plaintiffs.

Melanie Foster, James I. Barnes, Deputy Dist. Attys., Reno, NV, for defendants Vincent G. Swinney, Sheriff of Washoe County, and Paul Donald.

Shirley Smith, Asst. U.S. Atty., Reno, NV, for remaining defendants.

### ORDER

EDWARD C. REED, Jr., District Judge.

The federal officials/defendants, all represented by the United States Attorney, move the Court (Doc. # 54) to dismiss plaintiffs' second amended complaint. Although not specifically stated, the basis for the motion to dismiss is for lack of jurisdiction, failure to state a claim and qualified immunity. Plaintiffs oppose the motion to dismiss (Doc. # 58) and defendants reply (Doc. # 61).

### STANDARDS FOR GRANTING MOTION TO DISMISS

#### A. Rule 12(b)(6) Failure to State a Claim

A court may grant a motion to dismiss for failure to state a claim on which relief can be granted only if it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief. *Western Reserve Oil & Gas Co. v. New*, 765 F.2d 1428, 1430 (9th Cir.1985), *cert. denied*, 474 U.S. 1056, 106 S.Ct. 795, 88 L.Ed.2d 773 (1986). A court may only look to the facts alleged in the complaint when deciding whether to grant a 12(b)(6) motion. *Id.* All material facts alleged in the complaint must be taken as true and construed in the light most favorable to the nonmoving party. *Amfac Mortgage Corp. v. Arizona Mall of Tempe*, 583 F.2d 426, 430 (9th Cir.1978).

#### B. Qualified Immunity

Qualified immunity protects government officials from civil liability for actions taken in the performance of discretionary functions when their actions do not violate clearly established statutory or constitutional rights of which a reasonable person should have known. *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982). Plaintiffs allege the defendants violated certain of the plaintiffs' rights. The defendants assert qualified immunity. This brings the qualified immunity claim to issue and a two prong test is employed to determine whether the defendant official is entitled to immunity.

First, the plaintiff bears the initial burden of establishing that the rights allegedly violated were clearly established at the time of defendant's actions. *Neely v. Feinstein*, 50 F.3d 1502, 1506, 1508 (9th Cir.1995); *Gasho v. United States*, 39 F.3d 1420, 1438 (9th Cir.1994); *Armendariz v. Penman*, 31 F.3d 860, 869 (9th Cir.1994) *reh'g en banc granted by*, 41 F.3d 493 (1994); *see Elder v. Holloway*, 975 F.2d 1388, 1392 (9th Cir.1991) *rev'd on other grounds* —— U.S. ——, 114

S.Ct. 1019, 127 L.Ed.2d 344 (1994) (outlining the extent of the plaintiff's "burden" of alleging a clearly established law).

If the plaintiff fails to carry this initial burden, the defendant is entitled to immunity. If the plaintiff carries this burden, the defendant is entitled to immunity only by demonstrating that a reasonable official in the defendant's position could have believed the challenged conduct did not violate a constitutional or statutory right. *Neely,* 50 F.3d at 1508; *Gasho* 39 F.3d at 1438; *Armendariz,* 31 F.3d at 869.

The only issue before the Court on a motion to dismiss is whether plaintiffs have alleged the violation of a clearly established federal right. The second prong, whether defendants could have believed the challenged conduct did not violate such rights is a factual question more properly addressed on motion for summary judgment.[1]

## DISCUSSION

### A. Section 1983 Does not Apply to Actions Against Federal Officers

■ The federal defendants correctly assert that Section 1983 of Title 42 does not apply to actions against federal government officials acting under color of federal law. On this basis, they argue that § 1983 does not afford a basis for jurisdiction against these defendants. The Court agrees wholeheartedly with the federal defendants. However, this avails them nothing. The second amended complaint at ¶ 2, p. 3, ln. 10–11 and p. 19, ln. 1 clearly alleges a *Bivens* action against the federal defendants. *Bivens v. Six Unknown Named Agents,* 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971) allows actions for the violation of federal rights by federal officials to be brought on the same basis as a § 1983 action.

Defendants do not even attempt to contradict this assertion of jurisdiction in their reply.

The Court has jurisdiction over the claims alleged against the federal defendants under *Bivens.* The motion to dismiss on this basis is denied.

### B. Declaratory Judgment

■ Defendants move to dismiss plaintiffs' claim for declaratory relief on the basis that it is meritless. The Court agrees although not necessarily for the reasons presented.

The complaint fails to indicate what in particular Mr. Conkey wishes to have the Court declare. Plaintiffs allege an actual controversy has arisen between them and defendants

whereby defendants assert the right, and plaintiffs deny such right, to retaliate against plaintiff DAVID CONKEY by prosecuting him for violation of NRS 453.554, 453.556 and 453.560, despite DAVID CONKEY's full compliance with federal law governing the chemical sales for which DAVID CONKEY is charged.

■ The failure to indicate what in particular plaintiffs seek by way of a declaratory judgment is in itself a failure to state a claim. Fed.R.Civ.P. 8(a)(3) (requiring a claim to include "a demand for judgment for the relief the pleader seeks." *See also Dillard v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 961 F.2d 1148 (5th Cir.1992) *cert. denied, Dillard v. Security Pacific Corp.,* —— U.S. ——, 113 S.Ct. 1046, 122 L.Ed.2d 355 (1993) ("In order to obtain a permanent injunction or a declaratory judgment, a party must make his request for such relief in his pleadings." Citing Fed.R.Civ.P. 8(a)); *Willett v. Wells,* 469 F.Supp. 748 (C.D.Tenn.1977), *aff'd,* 595 F.2d 1227 (6th Cir.1979) (plaintiff required to include a short and plain statement of the claim showing she is entitled to the injunctive relief for which she prays).

Absent a specific recitation of the declaratory or injunctive relief sought, the Court and defendants are entirely unable to determine whether the complaint alleges sufficient facts to show that plaintiff is entitled to the requested relief.

The Court assumes that plaintiffs seek a declaration that Mr. Conkey is not susceptible to prosecution under NRS § 453.560 for

---

1. The federal defendants' motion does not indicate that the complaint alleges facts mandating qualified immunity because a reasonable officer must have believed the challenged conduct did not violate any clearly established rights.

selling or possessing hydriodic acid (HI) so long as he complies with federal laws regulating its sale. Nevertheless, the complaint suffers other defects.

First, the Court notes that only Mr. Conkey has standing to assert this claim. The complaint alleges only that defendants assert a right to prosecute Mr. Conkey. None of the other plaintiffs has standing to assert Mr. Conkey's rights; at least, no basis for third party standing is asserted.

Second, there is no allegation that compliance with federal law is in some manner a bar to prosecution for state law violations. So far as the Court is aware, federal drug laws regulating HI do not pre-empt state criminal laws to the extent they are not incompatible nor do they immunize persons who comply with federal regulatory laws. Certainly plaintiffs do not allege any such pre-emption, bar or immunity exists.

NRS § 453.560 prohibits the unlawful delivery, sale, possession or manufacture of "drug paraphernalia" when a person knows or reasonably should know that it will be used to manufacture, convert produce or prepare a controlled substance. NRS §§ 453.554 & 453.556 define the term "drug paraphernalia." NRS § 453.554 defines "drug paraphernalia" to include

all equipment, products and materials of any kind which are used, intended for use, or designed for use in ... manufacturing, compounding, converting, producing, preparing ... a controlled substance in violation of this chapter [§ 453].

Plaintiffs' complaint fails to allege the factual or legal basis upon which they deny any right of defendants to retaliate against Mr. Conkey be prosecuting him for violations of NRS § 453.560. Plaintiffs simply state that because Mr. Conkey has complied with federal laws regarding the sale of HI, he may not be prosecuted for violation of NRS § 453.560 based on his sale or possession of HI. However, plaintiffs never allege the source of this protection from prosecution for violations of NRS § 453.560.

Furthermore, it appears that the criminal prosecution of Mr. Conkey for violation of NRS § 453.560 has been dismissed. There is no allegation that he is threatened with or likely to be prosecuted for violation of NRS § 453.560. The bare allegation that a controversy exists between plaintiffs and defendants is insufficient. Plaintiffs bear the burden of adequately alleging the existence of an actual case or controversy and have failed to do so. Plaintiffs have not alleged that Mr. Conkey intends to continue selling HI in Nevada or that it is likely he will be prosecuted under NRS § 453.560 in the future for doing so. Under these circumstances, there is no Art. III case or controversy. *Los Angeles v. Lyons,* 461 U.S. 95, 105–106, 103 S.Ct. 1660, 1666–1667, 75 L.Ed.2d 675 (1983).

Last, plaintiffs have failed to allege any basis for subject matter jurisdiction. Plaintiffs allege jurisdiction under 28 U.S.C. §§ 1331, 1337(a) and 1343(a)(3). To the extent the Court understands plaintiffs' claim for declaratory relief, we believe plaintiffs assert Mr. Conkey is entitled to immunity from or bar against prosecution under NRS § 453.560 if he complied with various federal laws governing the sale of HI. However, plaintiffs never identify the source of that immunity. If it arises from federal law, there might be jurisdiction. However, it is equally possible the claimed immunity or bar arises from state law; i.e. Nevada could exempt the prohibitions of certain state laws on the basis of a person's compliance with corollary federal regulations. If such is the case, the existence of the asserted immunity or bar presents *no federal question under* § 1331 nor any jurisdiction arising under § 1337(a) nor any jurisdiction arising under § 1343(a)(3). The Court does not preclude the possibility that jurisdiction might exist on some other basis, such as 28 U.S.C. § 1367.

The motion to dismiss is granted with respect to plaintiffs' claim for declaratory relief. Plaintiffs' fourth claim for relief is dismissed without prejudice.

## C. Injunctive Relief

Plaintiffs' third claim for relief is for injunctive relief. Specifically, plaintiffs request "[a]n order enjoining any future criminal prosecution of plaintiff Mr. Conkey under Nevada's 'drug paraphernalia' law [NRS

§ 453.560] for the sale of HI, which is extensively regulated by federal law."

The federal defendants move to dismiss the claim for injunctive relief on the basis that "the emergency regulation [pursuant to which some of the complained of searches and seizures took place] has been repealed [and] there is no longer any threat of future searches and seizures based upon that regulation."

The Court first notes that, as with plaintiffs' claim for declaratory relief, plaintiffs' complaint seeks an injunction protecting only Mr. Conkey from future criminal prosecution. The other plaintiffs lack standing to assert Mr. Conkey's rights.

The Court also notes that the only injunctive relief requested seeks to prevent any future criminal prosecution of Mr. Conkey for violation of NRS § 453.560 based on his sale of HI. However, there is no indication or allegation that Mr. Conkey is likely to be criminally prosecuted in the future on this basis.

Plaintiffs allege a threat and thus the possibility that defendants will continue a policy of illegal arrests, detentions, searches and attempted searches as well as continued interference with the attorney-client relationship. However, there is no allegation of any threat or likelihood that Mr. Conkey will be criminally prosecuted in the future. Nor is there any request for an injunction prohibiting future illegal arrests, detentions, searches or interference with the attorney-client relationship. There is no case or controversy and no subject matter jurisdiction.

Further, as defendants indicate in their motion to dismiss and as is affirmatively alleged in plaintiffs' second amended complaint, the emergency regulation adopted by the Nevada State Board of Pharmacy which listed HI as an immediate precursor of methamphetamine has been repealed. Nor have plaintiffs indicated that Mr. Conkey intends to continue dealing in HI retail sales. These facts make it unlikely that any future arrests or searches will occur due to Mr. Conkey's mere possession of HI.

The federal defendants' motion to dismiss plaintiffs' request for an order enjoining future criminal prosecution of Mr. Conkey under NRS § 453.560 for sale of HI is granted. This request for injunctive relief is dismissed without prejudice.

## D. Qualified Immunity

■ The last ground on which the federal defendants base their motion to dismiss is the defense of qualified immunity. Defendants only assert qualified immunity in defense of Mr. Conkey's claim that they wrongfully destroyed his property. This claim alleges that defendants came onto Mr. Weller's business premises on February 17, 1994, seized certain chemicals belonging to Mr. Conkey and summarily forfeited and destroyed them.

Mr. Weller is apparently in the business of packaging articles for other business and had large quantities of HI belonging to Mr. Conkey at his place of business to be packaged for Mr. Conkey. Mr. Conkey is allegedly a retail seller of chemicals including HI.

The second amended complaint alleges that these actions deprived Mr. Conkey of his property in violation of the Fourth, Fifth, Sixth and Fourteenth Amendments to the United States Constitution and in violation of the applicable civil forfeiture statutes. Second amended complaint, ¶ 67; opposition to motion (Doc. # 58) p. 4, ln. 12–20.

These allegations establish a claim for deprivation of property without due process of law as required by the Fifth Amendment to the Constitution of the United States. The allegation that the defendants destroyed Mr. Conkey's property is a taking or deprivation of property every bit as much as a forfeiture of that property.

Defendants have asserted qualified immunity. They are entitled to have this claim against them dismissed, unless the complaint alleges the violation of a clearly established statutory or constitutional right.

### 1. Statutory Rights

Mr. Conkey argues that the defendants actions, as alleged in the complaint, violated his rights as clearly established by 21 U.S.C. § 881. *See* opposition (Doc. # 58). The defendants' motion to dismiss requires Mr.

Conkey to demonstrate that 21 U.S.C. § 881 clearly establishes that the owner of chemicals such as HI are entitled to some process before those chemicals may be forfeited or destroyed.

Mr. Conkey attempts to do so, but fails. 21 U.S.C. § 881(f)(1) provides that

> all dangerous, toxic, or hazardous raw materials or products subject to forfeiture under subsection (a)(2) of this section ... shall be deemed contraband and seized and summarily forfeited to the United States.

Similarly, § 881(f)(2) provides that

> The Attorney General may direct the destruction of ... all dangerous, toxic, or hazardous raw materials or products subject to forfeiture under subsection (a)(2) of this section ... under such circumstances as the Attorney General may deem necessary.

Mr. Conkey apparently confuses the language in subsection 881(f)(1) indicating that such chemicals may be "summarily forfeited" with the administrative forfeiture provisions of the United States Customs Laws. Thus, Mr. Conkey argues that the administrative procedures outlined at 19 U.S.C. § 1595a et seq. still apply. It is true that 19 U.S.C. § 1609 refers to a "summary" forfeiture of seized property if no person claiming an interest in the property contests timely files a claim to it. Other cases may refer to these administrative forfeiture provisions as "summary" forfeiture proceedings. Nevertheless, the clear import of 21 U.S.C. § 881(f)(1) & (2) is to allow the forfeiture or destruction of certain items without having to resort to administrative forfeiture proceedings.

Any construction interpreting the "summary" forfeiture provision of § 881(f)(1) or the destruction provision of § 881(f)(2) to require application of administrative forfeiture proceedings is nonsensical. Section 881(a) & (d) already establish that the items subject to "summary" forfeiture pursuant to § 881(f)(1) are subject to forfeiture pursuant to the "law relating to the seizure, summary and judicial forfeiture, and condemnation of property for violation of the customs laws[.]" Section 881(d). Unless "summary" forfeiture pursuant to § 881(f)(1) means something different than "summary" forfeiture as defined at 19 U.S.C. § 1609 the entirety of § 881(f)(1) is mere surplusage. It is a cannon of statutory interpretation to avoid such results.

We are bolstered in this interpretation by certain cases. The Court is unable to find any published cases interpreting § 881(f). However, three unpublished dispositions indicate this interpretation is correct. *See United States v. One Ohaus Digital Electronic Scale,* 25 F.3d 1059, 1994 WL 232079 (10th Cir.1994); *United States v. Leeson,* 990 F.2d 1263, 1993 WL 113815 (9th Cir.1993); and *Philip Vasta v. Commissioner of Internal Revenue,* 1989 WL 111296, 58 T.C.M. (CCH) 263 (U.S.Tax Ct.1989). We do not cite any of these cases for any precedential effect, but merely as an indication that no court presented with a summary forfeiture or destruction of property under § 881(f) has indicated that it requires compliance with the administrative procedures contained in the customs laws.

Finally, although we do not think § 881(f)(2) ambiguous, it is useful to look to the legislative intent. Sections 881(f)(1) & (2) were amended pursuant to Pub.L. 101–647, Title XX, § 2004, Nov. 29, 1990, 104 Stat. 4855, 4856. The amendment added language indicating that "all dangerous, toxic, or hazardous materials" could be summarily forfeited or destroyed according to the previously existing provisions of § 881(f)(1) & (2).

An analysis of the proposed amendment was introduced into the Congressional Record on the motion of Senator Biden and by the unanimous consent of the Senate. 135 Cong.Rec. S12622–01 (1989). The said analysis indicated that dangerous, toxic, and hazardous materials were not currently "subject to the summary forfeiture and expeditions destruction provisions [then] applicable to schedule I and II controlled substances under section 881(f)." *Id.* at ——. The analysis further stated that the proposed amendment would add dangerous, toxic, and hazardous raw materials to the category of property subject to summary forfeiture and destruction. *Id.* Finally, the analysis recited that

[t]he amendment is needed because law enforcement agents investigating illegal laboratories are placed in a position of danger in seizing and transporting hazardous substances.

*Id.* At a later point the analysis proceeded to note that

[t]he customs procedures, involving either judicial or administrative forfeiture, are time-consuming and necessitate the handling and storage of property. Hazardous substances used or intended for use in the manufacture of controlled substances should be exempt from these procedures because of the dangers they create for law enforcement agents.

*Id.*

The House of Representatives had a much similar analysis. H.R.Rep. No. 101–681(I), 101st Cong., 2nd Sess., 1990 at 313–314 (1990), 1990 U.S.Code Cong. & Admin.News, 6472.

The legislative history clearly indicates that Congress, concerned for the safety of law enforcement personnel, passed the amendment to allow such personnel to forfeit and destroy dangerous chemicals immediately so that the risks associated with seizing, handling, transporting and storing such chemicals could be avoided. Congress clearly distinguished between the summary forfeiture and expeditious destruction procedures allowed under § 881(f)(1) & (2) and the relatively slow and time consuming procedures available under the customs laws.

If anything, it is clearly established that 21 U.S.C. § 881(f)(1) & (2) allows the summary forfeiture and destruction of dangerous chemicals such as HI without having to comply with the administrative procedures prescribed by the customs laws. It is certainly not clearly established that § 881(f)(1) & (2) requires compliance with those administrative procedures.

To the extent Mr. Conkey claims that his property was taken or destroyed in violation of the procedures mandated by § 881 were not followed, the federal defendants motion to dismiss is granted. There was no clearly established statutory requirement that dangerous chemicals such as HI be forfeited or destroyed only pursuant to the administrative procedures of the customs laws.

### 2. Constitutional Rights

Merely because the federal defendants are entitled to qualified immunity on the basis of Mr. Conkey's statutory claim does not end the matter. A statute which purports to authorize action in plain violation of clearly established constitutional rights cannot immunize officials who act in accordance with it. Federal officials are charged with knowledge of all relevant constitutional law.

The complaint alleges that the federal defendants destroyed the HI in violation of Mr. Conkey's Fifth Amendment rights.

The question now before the Court is whether plaintiffs' complaint alleges the violation of a clearly established constitutional right.

#### a. A person may not be deprived of property without due process

It is clearly established that a person may not be deprived of property without due process of law. U.S. Const.Amend. V. Of course this level of specificity is not sufficient. There is no single formula for determining what due process requires before a person may be deprived of property. The amount or method by which due process of law is afforded is dependant on several circumstances. *Mathews v. Eldridge,* 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976) To say that due process is required is really the beginning of a question and not an answer in itself.

However, the Court is aware of no case holding that under any circumstances a person may be deprived of property without any due process. The process due may be slight, or of an unusual form, however, whenever it is determined that a person is or will be deprived of property by government action some procedural protection is due.

Normally, due process requires that before a person may be deprived of a property interest by the government, the deprivation must be preceded by notice and an opportunity for a hearing appropriate to the case. *United States v. James Daniel Good Real*

*Property,* —— U.S. ——, 114 S.Ct. 492, 126 L.Ed.2d 490 (1993). This proposition was well founded at the time the defendants destroyed Mr. Conkey's HI. *See id.* citing cases; *Logan v. Zimmerman Brush Co.,* 455 U.S. 422, 428, 102 S.Ct. 1148, 1153, 71 L.Ed.2d 265 (1982).

It is also clear that the Fifth Amendment applies to civil forfeiture actions and is not displaced or pre-empted by the Fourth Amendment. *James Daniel Good,* —— U.S. at ——, 114 S.Ct. at 499.

The amount of procedural protection required in any particular case depends on the importance of the private interest, the severity of the deprivation of that interest, the likelihood of government error, and the magnitude of the government interests involved. *Logan v. Zimmerman Brush Co.,* 455 U.S. 422, 435, 102 S.Ct. 1148, 1157, 71 L.Ed.2d 265 (1982). Property of the sort that can easily be removed from one jurisdiction to another, destroyed or concealed which the government seeks to institute forfeiture proceedings against may be properly seized without prior notice or hearing. *Calero–Toledo v. Pearson Yacht Leasing Co.,* 416 U.S. 663, 679, 94 S.Ct. 2080, 2089, 40 L.Ed.2d 452 (1974). These circumstances, which we might broadly label "exigent" create a "special need for very prompt action" and justify postponing the notice and hearing until after the seizure. *Id.* quoting *Fuentes v. Shevin,* 407 U.S. 67, 91, 92 S.Ct. 1983, 2000, 32 L.Ed.2d 556 (1972). Conversely, when the property is not readily susceptible to removal, concealment or destruction there are no exigent circumstances justifying seizure of the property without prior notice and hearing. *James Daniel Good,* —— U.S. at —— & ——, 114 S.Ct. at 500 & 505.

Implicit in the cases allowing seizure of property prior to notice and hearing is the belief that eventually notice and a hearing must be given before an individual can be permanently deprived of the property. "[I]t has become a truism that '*some* form of hearing' is required before the owner is finally deprived of a protected property interest." *Logan v. Zimmerman Brush Co.,* 455 U.S. 422, 433, 102 S.Ct. 1148, 1156, 71 L.Ed.2d 265 (1982) quoting *Board of Regents v. Roth,* 408 U.S. 564, 570–571, n. 8, 92 S.Ct. 2701, 2705–2706, n. 8, 33 L.Ed.2d 548 (1972) (emphasis in original). "To put it as plainly as possible, the State may not finally destroy a property interest without first giving the putative owner an opportunity to present his claim of entitlement." *Id.* at 433–434, 102 S.Ct. at 1156–1157.

 Thus, although property subject to forfeiture may be seized prior to notice and a hearing, the government may not permanently deprive the owner of that property without notice and the opportunity to appear at some hearing. Once the risk of removal, concealment or destruction of the property is obviated, (because seized and in the government's possession) due process requires notice and a hearing before the temporary deprivation of the property is extended or converted into a permanent deprivation.

### b. Contraband

The federal defendants do not specifically address Mr. Conkey's claim that the defendants deprived him of property without due process of law. Nevertheless, it is clear from the defendants' statutory argument that they claim the HI they destroyed was contraband and subject to summary forfeiture.

There are two kinds of contraband: per se and derivative contraband. *One 1958 Plymouth Sedan v. Pennsylvania,* 380 U.S. 693, 699, 85 S.Ct. 1246, 1250, 14 L.Ed.2d 170 (1965); *United States v. Eighty–Eight Thousand, Five Hundred Dollars,* 671 F.2d 293, 297 nn. 8 & 9 (8th Cir.1982); *United States v. Farrell,* 606 F.2d 1341, 1344 (D.C.Cir.1979); *United States v. One (1) 1971 Harley–Davidson Motorcycle,* 508 F.2d 351, 352 (9th Cir. 1974); *United States v. McCormick,* 502 F.2d 281, 288 (9th Cir.1974); *Ramsey v. United States,* 329 F.2d 432, 435· (9th Cir.1964); *United States v. Eight (8) Rhodesian Stone Statues,* 449 F.Supp. 193, 206 (C.D.Cal.1978).

Per se contraband is that which by its very nature makes it illegal, such that no person may have cognizable property rights to it. *See Eight Rhodesian Stone Statues,* 449 F.Supp. at 206. "It is well established that a claimant has no right 'to have [*per se* contra-

band] returned to him.'" *Farrell*, 606 F.2d at 1344, quoting *United States v. Jeffers*, 342 U.S. 48, 54, 72 S.Ct. 93, 96, 96 L.Ed. 59 (1951); *McCormick*, 502 F.2d at 288.

Derivative contraband on the other hand is property, not ordinarily illegal, but which becomes illegal through the manner or the intent with which it is used, possessed or acquired: "only its illegal use makes its possession illegal." *Farrell*, 606 F.2d at 1344; *McCormick*, 502 F.2d at 288.

■ While per se contraband may be summarily forfeited without any due process protections, property which is derivative contraband is susceptible of protectible property rights and cannot be civilly forfeited without some due process protections. *Farrell*, 606 F.2d at 1344–1346; *United States v. One 1972 Datsun*, 378 F.Supp. 1200, 1205 (N.H. 1974).

### c. Mr. Conkey was entitled to and did not receive any procedural protections when his property was destroyed

The hydriodic acid owned by Mr. Conkey was not an article of per se contraband at the time it was destroyed. Its contraband status was dependant on the purpose for which it was being or intended to be used. Therefore, Mr. Conkey was entitled to some due process before the government could legitimately take and destroy it.

Normally, we apply the three-part inquiry set forth in *Mathews v. Eldridge*, 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976) to determine whether a due process violation occurred. *See James Daniel Good*, —— U.S. at ——, 114 S.Ct. at 501. However, that test determines whether the process given was adequate to satisfy due process concerns. The *Mathews v. Eldridge* analysis does not determine whether a complete absence of process is permitted, but merely what process is due. Here, there was a complete failure of process.

The Court need not apply the *Mathews v. Eldridge* analysis to determine whether adequate process was given. If that were the case, the federal defendants might well be entitled to qualified immunity, because there is no clearly established rule regarding the amount of process which must be given when the government destroys property pursuant to 21 U.S.C. § 881(f)(2). However, the Court is not faced with a question of whether the process given was adequate. The Court is faced with a situation in which no process was given.

Mr. Conkey, so far as the Court can determine, was never given any notice or an opportunity for a hearing to assert and protect his property interests in the destroyed hydriodic acid. Certainly his complaint does not indicate that he ever received such notice or hearing. It does not appear that 21 U.S.C. § 881 or any relevant statute provides for any notice or hearing in this situation. Section 881(f)(1) provides that "dangerous, toxic, or hazardous raw materials or products subject to forfeiture under subsection (a)(2) ... shall be deemed contraband and seized and summarily forfeited to the United States." Once forfeited to the United States there is no provision for returning the property. Section 881(f)(2) provides that the "Attorney General may direct the destruction of ... all dangerous, toxic or hazardous raw materials or products subject to forfeiture under subsection (a)(2) ... under such circumstances as the Attorney General may deem necessary." Once destroyed it is obvious that the property itself cannot be returned, yet there is no provision for compensating claimants of property which was mistakenly or wrongly destroyed.

### i. The search warrant is not an adequate procedural protection

The federal agents in this case had a search warrant, dated February 17, 1994, entitling them to search Mr. Conkey's place of business for chemicals (including HI) being stored and used in violation of NRS § 453.560. To the extent the search warrant, necessarily supported by probable cause, is asserted as some form of "due process" it fails.

While searching Mr. Conkey's place of business pursuant to the warrant on February 17, 1994, Mr. Weller appeared. Defendants then questioned Mr. Weller and obtained his consent to a search of his place of business for HI owned by Mr. Conkey and to

removal of any HI discovered there. The defendants did find HI owned by Mr. Conkey at Mr. Weller's place of business. They seized and then destroyed the HI which they found there as a dangerous chemical under 21 U.S.C. § 881(f)(2) forfeitable under § 881(a)(2).

The warrant was issued based on probable cause that Mr. Conkey was in illegal possession of drug paraphernalia, a violation of NRS § 453.560 and that evidence of this crime, i.e. the chemicals illegally possessed (including HI) would be found at Mr. Conkey's place of business. The warrant did not purport to find probable cause that Mr. Conkey possessed any "dangerous, toxic, or hazardous raw materials or products subject to forfeiture under subsection (a)(2)...." 21 U.S.C. § 881(f)(1) & (2).

Possession of HI with the intent to manufacture methamphetamine or to sell it to persons who would do so may be a violation of law supporting forfeiture under § 881(a)(2). If the warrant specified that this was the particular crime supported by probable cause the Court would agree that the state warrant necessarily stated probable cause to believe Mr. Conkey was committing a violation permitting forfeiture under § 881(a)(2). However, the warrant is not so specific. The warrant merely recites probable cause to believe crimes, in violation of NRS §§ 453.554, 453.556 and 453.560, had been committed by Mr. Conkey. The listed statutes are very broad and may criminalize certain conduct which could not support forfeiture under § 881(a)(2). Therefore, the warrant does not necessarily state probable cause to believe a crime supporting a civil forfeiture of HI under § 881(a)(2) had occurred.

In addition, the warrant only recited probable cause to believe that **evidence** (including hydriodic acid) of the listed crimes, might be found at Mr. Conkey's place of business. The warrant did not state probable cause to believe that the HI located at Mr. Conkey's place of business was itself intended for use in manufacturing, compounding, processing, delivering, importing, or exporting any controlled substance. Thus, the warrant does not state probable cause to believe the HI located at Mr. Conkey's place of business was contraband or forfeitable. It only stated probable cause to believe the HI might be **evidence** of a violation.

Last, the warrant indicates probable cause that the HI **located at Mr. Conkey's place of business** was evidence of a violation. The warrant makes no mention of hydriodic acid located at Mr. Weller's place of business. Therefore the warrant does not support probable cause to believe the HI stored at Mr. Weller's place of business was contraband or forfeitable under § 881(a)(2).

In addition to all these problems with this warrant, the Ninth Circuit has made clear that property is not forfeitable on probable cause alone. *United States v. Lot 4, Block 5 of Eaton Acres,* 904 F.2d 487, 491–92 (9th Cir.1990). The claimant must be given an opportunity to disprove the government's evidentiary showing of probable cause. *Id.* at 491. "If the claimant offers no proof, or if the trier of fact remains in equipoise upon hearing the claimant's proof, the government wins." *Id.*

Thus, the warrant, even if it stated probable cause to believe the HI belonging to Mr. Conkey which was stored at Mr. Weller's place of business was forfeitable under § 881(a)(2) it is insufficient, by itself to support the forfeiture and permanent deprivation of Mr. Conkey's property.

### ii. There is no adequate post-deprivation remedy

In certain circumstances due process may be satisfied if an adequate post-deprivation remedy is provided. *See Parratt v. Taylor,* 451 U.S. 527, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981) (overruled by *Daniels v. Williams,* 474 U.S. 327, 106 S.Ct. 662, 88 L.Ed.2d 662 (1986) & *Davidson v. Cannon,* 474 U.S. 344, 106 S.Ct. 668, 88 L.Ed.2d 677 (1986).

The Supreme Court in *Parratt,* determined that a prisoner, negligently deprived of property when his mail was lost by prison authorities stated a deprivation of property necessitating due process analysis. The Court held that, because there was no way to give pre-deprivation notice and hearing of unforeseen negligent acts, adequate post-deprivation procedures (such as state tort law)

could satisfy due process. *Parratt*, 451 U.S. 527, 101 S.Ct. 1908. *Daniels* simply held that a negligent act does not implicate the Due Process Clause. 474 U.S. at 328, 106 S.Ct. at 663. This was based on the concept that a "deprivation" as understood by the Due Process Clause includes a mental element and mere negligence does not arise to a constitutional "deprivation" requiring due process.

The *Daniels* Court held, "[u]pon reflection, we agree and overrule *Parratt* to the extent that it states that mere lack of due care by a state official may 'deprive' an individual of life, liberty, or property under the Fourteenth Amendment." *Id.* at 330–331, 106 S.Ct. at 664.

The Court did NOT overrule *Parratt* to the extent it held that in certain contexts a constitutional deprivation may be afforded adequate due process through a post-deprivation remedy. Indeed, there are other situations in which the Supreme Court has held that a post-deprivation remedy is adequate process entitling the government to seize and destroy property prior to any notice or hearing. In *North American Cold Storage Co. v. Chicago*, 211 U.S. 306, 29 S.Ct. 101, 53 L.Ed. 195 (1908), the Court "upheld the right of a State to seize and destroy unwholesome food without a preseizure hearing. The possibility of erroneous destruction of property was outweighed by the fact that the public health emergency justified immediate action and the owner of the property could recover his damages in an action at law after the incident." *Parratt*, 451 U.S. at 538–539, 101 S.Ct. at 1914 (citing other cases).

Here, the grave risk facing law enforcement officials who must deal with toxic and dangerous chemicals might justify prenotice seizure and destruction of the chemicals. Recognizing this however does not absolve the duty to provide some post-seizure and destruction hearing and remedy. The cases cited in *Parratt*

> recognize that either the necessity of quick action by the State or the impracticality of providing any meaningful predeprivation process, when coupled with the availability of some meaningful means by which to assess the propriety of the State's action at

some time after the initial taking, can satisfy the requirements of procedural due process.

451 U.S. at 539, 101 S.Ct. at 1915.

Where, as here, the government acts deliberately we think due process demands that the government bear the burden of making a post-deprivation hearing available. Due process is not satisfied by the possibility that a plaintiff might be able to initiate an independent action. Shifting the burden to the claimant/owner of property does not comport with notions of fair play. If the government wishes to take and destroy its citizens property without advance notice and hearing, it may be justified in doing so. However, it must also bear the burden of providing notice and a forum in which the propriety of its actions will be determined.

No such post-deprivation notice and hearing was provided Mr. Conkey and it appears none is available. Title 19 U.S.C. § 1618 provides that

> [w]henever any person interested in any [thing] seized under the provisions of this chapter or who has incurred, or is alleged to have incurred, any fine or penalty thereunder, files with the Secretary of the Treasury [or other appropriate official] ... before the sale of such [thing] ... a petition for the remission or mitigation of such fine, penalty, or forfeiture, [said official] ... may remit or mitigate the same upon such terms and conditions as he deems reasonable and just, or order discontinuance of any prosecution relating thereto.

This provision is not an adequate post-deprivation remedy. It does not appear to apply to the facts before the Court. Furthermore, this provision is discretionary. *United States v. One 1976 Porsche 911S, Etc.*, 670 F.2d 810, 813 (9th Cir.1979); *United States v. One Volvo Sedan, L. No. 861 DQF*, 393 F.Supp. 843, 847 (C.D.Cal.1975). As the Ninth Circuit Court of Appeals noted, § 1618 is intended "to mitigate the harshness caused by the application of the forfeiture statutes." *One 1976 Porsche*, 670 F.2d at 813. It is not a remedy or determination that the property was wrongfully deprived.

A discretionary power to return or remit some, none or all of a person's forfeited property, which discretion lies in the same executive branch which forfeited the property, cannot be seriously contended to provide adequate process.

The Court notes that Congress has seen fit to provide post-deprivation remedies in other contexts which might satisfy due process. Title 18 U.S.C. § 844(c) deals with the seizure and destruction of explosive materials used or intended for use in any violation of Title 18, Chapter 40. Section 844(c)(1) provides in part that "any explosive materials involved or used or intended to be used in any violation of the provisions of this chapter ... shall be subject to seizure and forfeiture...." Section 844(c)(2) provides that

in the case of the seizure of any explosive materials for any offense for which the materials would be subject to forfeiture in which it would be impracticable or unsafe to remove the materials to a place of storage or would be unsafe to store them, the seizing officer may destroy the explosive materials forthwith. Any destruction under this paragraph shall be in the presence of at least 1 credible witness. The seizing officer shall make a report of the seizure and take samples as the Secretary may be regulation prescribe.

Finally, section 844(c)(3) provides that

[w]ithin 60 days after any destruction made pursuant to paragraph (2), the owner of (including any person having an interest in) the property so destroyed may make application to the Secretary for reimbursement of the value of the property. If the claimant establishes to the satisfaction of the Secretary that—

(A) the property has not been used or involved in a violation of the law; or

(B) any unlawful involvement or use of the property was without the claimant's knowledge, consent, or willful blindness,

the Secretary **shall** make an allowance to the claimant not exceeding the value of the property destroyed.

Emphasis added.

Without discussing the constitutional adequacy of this provision, it cannot be gainsaid that it affords much greater process to a person whose property has been seized and destroyed without advance notice or hearing. Most importantly, it mandates that the Secretary **shall** make an award to such owners who satisfy the required showing.

#### d. Conclusion

The law is clearly established that a person may not be constitutionally deprived of property without due process of law. It is also clear that property rights in derivative contraband are entitled to procedural protection and owners of such property may not be deprived of it without some process. The hydriodic acid in which Mr. Conkey claims an interest was not per se contraband at the time it was seized and destroyed. Therefore it is clear that Mr. Conkey could not be deprived of ownership rights in the hydriodic acid without some process. Although the amount, kind and timing of the process to which Mr. Conkey was due may be unclear, it is clear that he was entitled to some process.

It is also clear that, under the facts as alleged in the complaint, Mr. Conkey was given no procedural protections whatsoever. The claimed property was destroyed. This is clearly a deprivation. Mr. Conkey was never given any notice, a hearing or any opportunity to challenge the propriety of the government conduct, assert his interest in the destroyed property or receive any compensation.

Under these facts, the federal defendants are not entitled to an order dismissing the claim that they deprived Mr. Conkey of property without due process of law on the basis of qualified immunity. The complaint alleges the violation of a clearly established constitutional right.

**IT IS, THEREFORE, HEREBY ORDERED** that the federal defendants' motion to dismiss (Doc. # 54) is *GRANTED* in part and *DENIED* in part.

**IT IS FURTHER ORDERED that** the motion to dismiss the claims for injunctive and declaratory relief (Doc. # 54) is *GRANTED.* The claims for injunctive and declaratory relief are hereby *DISMISSED.*

IT IS FURTHER ORDERED that the motion to dismiss on the basis that § 1983 provides no jurisdiction (Doc. # 54) is *DENIED*. Jurisdiction over the federal defendants is alleged and does exist under *Bivens*.

IT IS FURTHER ORDERED that the motion to dismiss on the basis of qualified immunity (Doc. # 54) is *GRANTED* in part and *DENIED* in part. To the extent the motion seeks qualified immunity for violation of statutory procedural rights the motion is *GRANTED*. There was no clearly established statutory right under 21 U.S.C. § 881 to administrative proceedings with respect to the destruction of hazardous chemicals. Mr. Conkey's claim that the federal defendants deprived him of property in violation of statutory procedural rights is *DISMISSED*. To the extent the motion seeks qualified immunity for violation of Mr. Conkey's due process rights, the motion is *DENIED*.